IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CBS CORPORATION, | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 12-1027 |
| vs. | ) | Judge David Stewart Cercone |
| | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| SCHINDLER ELEVATOR | ) | |
| CORPORATION, | ) | Re: ECF Nos. 35 and 40 |
|     Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

At the heart of this diversity action is an Asset Purchase Agreement ("APA") that Westinghouse Electric Corp., the predecessor to Plaintiff CBS Corporation ("CBS"), and Defendant Schindler Elevator Corporation ("Schindler") entered into in October of 1988, pursuant to which Schindler agreed to purchase certain assets and assume certain liabilities of Westinghouse Elevator Co.[1] In particular, Schindler agreed to assume responsibility for workmen's compensation claims "incurred but not paid prior to closing." Schindler has since failed to accept that responsibility with respect certain claims tendered by CBS prompting CBS to file suit.

Presently before the Court are Schindler's Motion for Summary Judgment Based on Statute of Limitations, ECF No. 35, and Schindler Elevator Corporation's Motion for Summary Judgment Based on Contract. ECF No. 40. For the following reasons, it is respectfully recommended that Schindler's Motion for Summary Judgment Based on Statute of Limitations

---

[1] Although the record is replete with references to Westinghouse Electric Corp., Westinghouse Elevator Co. and Viacom, Inc., successor by merger to CBS, for clarity and consistency sake, the Court will refer to all of these entities as CBS.

be granted, and that Defendant Schindler Elevator Corporation's Motion for Summary Judgment Based on Contract be dismissed as moot.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Under Section 4.1 of the APA, Schindler agree to assume liability for:

> workmen's compensation claims of any Employees respecting the Business which were incurred but not paid prior to Closing, whenever filed, provided that such workmen's compensation claims are within the statutory structure for workmen's compensation claims.

ECF No. 1, ¶ 9; ECF No. 37, ¶ 3. On August 26, 2004, pursuant to Section 4.1 of the APA, Mary A. Bishop ("Bishop"), a paralegal at CBS, sent a letter to John S. M. Karnash ("Karnash") at Schindler enclosing the notice of a workmen's compensation claim filed by a former elevator employee, Bernard Daley. ECF No. 38-1, p. 2. In the letter, Bishop asked Schindler to take the necessary steps to defend CBS against the claim and to "confirm within 5 days [Schindler's] acceptance of this tender." Id. Having failed to receive a response either to her letter or subsequent telephone calls made to Karnash, Bishop sent a second letter of tender on October 1, 2004, reiterating that CBS had determined that Schindler was contractually responsible for Daley's workmen's compensation claim and indicating that, because the claim was already set for a hearing, Schindler's refusal to communicate gave CBS no choice but to manage the claim itself and recover the costs from Schindler at a later date. ECF No. 38-2, p. 2.

On October 15, 2004, following an apparent conversation with Bishop, counsel for CBS, Robert A. Noethiger ("Noethiger"), sent Karnash a third letter regarding the Daley claim. ECF No. 38-3, p. 2. Therein, Noethiger particularized CBS's position regarding the language of Section 4.1, stating that the "contractual language makes it clear that liability for Mr. Daley's

2

claim is allocated to Schindler . . . ." Id.  Again, no response was ever received from Karnash or anyone from Schindler.

Over eight months later, on June 29, 2005, at Noethiger's request, Bishop forwarded the letters that had been sent to Karnash to counsel for Schindler, Roy Alan Cohen ("Cohen").  On July 13, 2005, Bishop also sent Cohen a copy of the award made on the Daley claim and asked Cohen to contact Noethiger to discuss the award at his earliest convenience.  ECF No. 38-4.  The next day, on July 14, 2004, Cohen e-mailed Noethiger regarding the claim.  ECF No. 38-4, p. 2. Therein Cohen reminded Noethiger that Section 4.1 of the APA provided that Schindler assumed liability only for workmen's compensation claims that were "incurred but not paid prior to closing," and then discussed the definition of the word "incurred."  Cohen concluded that the best interpretation was that "incurred" referred to "claims that were 'noticed' or 'known' at the time of the Agreement," and that because Mr. Daley's claim was unknown and not reported at the time of the asset purchase, it "was not incurred or included as one which was subject to coverage or indemnification under the agreement."  Id.  Cohen then invited further discussion if Noethiger had any "schedules or evidence which indicates a different interpretation."  Id.  It appears that no such evidence was forthcoming and no further discussions or communication between CBS and Schindler relative to the Daley claim is of record.

CBS filed the instant Complaint on July 23, 2012, ECF No. 1, in which it alleges that Schindler has breached the terms of the APA by failing to reimburse or indemnify CBS for certain workmen's compensation claims that were filed against it, or its predecessors, which have been settled or otherwise resolved (Count I).  In addition, CBS seeks a declaratory judgment that Schindler is bound to defend and/or indemnify CBS in connection with other more recently filed workmen's compensation claims that are currently pending (Count II).

On November 15, 2013, Schindler filed the instant Motion for Summary Judgment Based on Statute of Limitations, ECF No. 34, and Motion for Summary Judgment Based on Contract. ECF No. 40. CBS filed its briefs in opposition to the respective Motions on December 16, 2013, ECF Nos. 56 and 57, respectively, and Schindler filed reply briefs on December 26, 2013. ECF Nos. 66, 63. The Motions are now ripe for review.

B.  **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). "W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ....

4

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### C. DISCUSSION

#### 1. Motion for Summary Judgment Based on Statute of Limitations

It is undisputed that under Pennsylvania law,[2] the statute of limitations for breach of contracts is four years. 42 Pa. C.S. § 5525(8). It is also undisputed that the limitations period begins to run as soon as the right to maintain a suit arises or when all the elements of the claim exist. Wiseman Oil Co., Inc. v. TIG Ins. Co., 878 F. Supp. 2d 597, 602 (W.D. Pa. 2012) (internal quotations and citations omitted).

Here, Schindler contends that it was evident from the e-mail sent by Cohen on July 14, 2005, that the parties had a disagreement over the application of Section 4.1 and that Schindler's interpretation of the clause was that it had no liability for Mr. Daley's claim or any other claims that were unknown at the time the APA was entered into. Schindler argues that its declination to accept liability for Daley's claim constituted a complete repudiation or breach of the APA thereby providing CBS with the right to institute a lawsuit for breach of contract at that time.

---

[2] The parties do not dispute that Pennsylvania law applies. See R.C. Beeson, Inc. v. Coca Cola Co., 337 F. App'x 241, 244 (3d Cir. 2009), *quoting* Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) ("[A] federal court must apply the substantive laws of its forum state in diversity actions and these include state statute of limitations").

5

Schindler therefor argues that CBS was obligated to bring suit within four years of that date or by July 15, 2009.³ Because CBS did not file the instant Complaint until July 23, 2012, Schindler concludes that CBS's claims are time barred.

In its response, CBS categorizes Cohen's July 14, 2005, e-mail as an anticipatory repudiation and then argues that because the e-mail does not amount to an absolute and unequivocal refusal to perform it does not constitute an anticipatory repudiation. In this Court's view, however, CBS's argument is misplaced as the concept of an "anticipatory repudiation" does not apply here.

An anticipatory repudiation or anticipatory breach "occurs when the promisor without justification and before he has committed a breach makes a positive statement to promissee indicating he will not or cannot perform his contractual duties." Black's Law Dictionary, p. 85 (5th ed. 1979). Thus, an anticipatory repudiation necessarily occurs before the time to perform under the contract has become due. See Tyco Electronics Corp. v. Milwaukee Elec. Tool Corp., 2012 WL 4793745, at *4 (M.D. Pa. Oct. 9, 2012), *citing* 13 Pa. C.S. § 2610 (the anticipatory repudiation applies when a party repudiates a contract with respect to performance *not yet due*) (emphasis added). As stated by the United States Supreme Court:

> [a] promisor's renunciation of a "contractual duty *before* the time fixed in the contract for ... performance" is a repudiation. 4 A. Corbin, Contracts § 959, p. 855 (1951) (emphasis added); Restatement § 250 (repudiation entails a statement or "voluntary affirmative act" indicating that the promisor "will commit a breach" when performance becomes due). Such a repudiation ripens into a breach prior to the time for performance only if the promisee "elects to treat it as such." *See Roehm v. Horst*, 178 U.S. 1, 13,

---

³ Schindler has also argues that, at the latest, the statute of limitations began to run on August 31, 2005, following a telephone conversation Cohen had with Noetinger during which Cohen expressly rejected Mr. Daley's claim under Section 4.1 of the APA. Schindler's argument is based on a Declaration submitted by Cohen in support of the instant Motion for Summary Judgment. CBS has objected to Cohen's Declaration as being improper particularly given that Noetinger has no specific recollection of the conversation. Schindler, however, has withdrawn Cohen's Declaration and thus it has not been considered. See ECF No. 66, p. 4, n.1. This notwithstanding, given the Court's finding below that the statute of limitations began to run on July 14, 2005, Cohen's reference to an unremembered telephone conversation would not have impacted the Court's analysis.

6

> 20 S.Ct. 780, 44 L.Ed. 953 (1900) (repudiation "give[s] the promisee the right of electing either to ... wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract").

Franconia Associates v. U.S., 536 U.S. 129, 143 (2002). Conversely, "[f]ailure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach." Id., *quoting* Restatement (Second) of Contracts § 235(2) (1979) ("When performance of a duty under a contract is due[,] *any* non-performance is a breach") (emphasis added).

Here, Schindler's duty under the APA was to assume liability of certain workmen's compensation claims. Thus, its duty to perform under the APA relative to Mr. Daley's workmen's compensation claim was due at the time CBS tendered the claim; at that point, according to CBS's interpretation of Section 4.1, Schindler was obligated to accept liability for the claim and begin to manage it. Mr. Cohen indicated in his e-mail, however, that the claim "was not incurred or included as one which was subject to coverage or indemnification under the [APA]." ECF No. 38-4, p. 2. CBS therefore had notice when it received Cohen's e-mail that Schindler was not accepting responsibility to either defend or indemnify CBS relative to claims that had not been noticed or known at the time the APA was entered into thereby giving rise to a breach of contract claim. Indeed, it is clear from the record that CBS recognized at the time that Schindler's position was inconsistent with the APA as Bishop and Noethiger both acknowledged as much in their deposition testimony allowing that they understood at the time that Schindler had a different interpretation of the APA and began rejecting the claims in 2004. ECF No. 38-5, pp. 38, 39, 58-59, 62; ECF No. 38-6, pp. 24, 37. See R.C. Beeson, Inc. v. Coca Cola Co., 337 F. App'x 241, 244-45 (3d Cir. 2009) ("The resulting diminished payments to Beeson, which Beeson recognized were inconsistent with the contract, were effective notice that Seagram did not intend to comply with its obligations . . . under the terms of the 1982 and 1987 Letter

7

Agreements"). Cohen's e-mail, therefore, does not constitute an anticipatory repudiation but rather was an immediate breach upon which CBS could have acted. As such, the statute of limitations began to run with the receipt of Mr. Cohen's e-mail in July of 2005, rendering CBS's Complaint untimely.

CBS's arguments to the contrary are not persuasive. Neither the fact that Schindler would not make payment(s) to Mr. Daley, had it accepted liability, until sometime in the future or that workmen's compensation payments are not made on a one time basis does not render the APA an installment contract or implicate the continuing contract doctrine. See Welch Foods, Inc. v. Borough of North East, 46 F. App'x 678, 682, (3d Cir. 2002), *quoting* Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 214 (3d Cir. 2001) (even when a contract requires continuing performance, where there has been "an outright repudiation" of the contract, the statute of limitation begins to run at that point"). To the contrary, had Schindler accepted tender of Mr. Daley's claim, Schindler's obligation to CBS under the APA would have been satisfied. As found by the United States Court of Appeals for the Third Circuit under similar circumstances, while the subsequent events may have been part of the fallout from the breach, they did not give CBS a basis for delaying action on its claim. R.C. Beeson, Inc. v. Coca Cola Co., 337 F. App'x at 245. To find otherwise would render the statute of limitations completely illusory as it would reduce CBS's obligation to pursue its claim "as something existing in perpetuity." Id.[4] See Brawner v. Educ. Mgmt. Corp, 2012 WL 3064019, at *11 (E.D. Pa. July 27, 2012), *quoting* McCreesh v. City of Philadelphia, 888 A.2d 664, 665 (Pa. 2005) ("the purpose of the statute of limitations ... is to protect defendants from stale claims").

---

[4] Indeed, in his July 14, 2004 e-mail Cohen invited CBS to provide any information that would counter Schindler's interpretation of the APA or suggest that Schindler was liable for Mr. Daley's claim. CBS provided no such information at the time and did not take any steps to protect its position for the next seven years.

8

Further, CBS's argument that Schindler's course of conduct contradicts its present position with respect to its liability for workmen's compensation does not compel a different result. Although CBS points to the fact that Schindler defended and ultimately settled claims filed in 1990 -- after the APA was executed -- by employees of the Randolph Plant, without any contribution from CBS, it is also clear from the record that Schindler nevertheless maintained its position from the outset that it was not responsible for the claims under Section 4.1 of the APA and, in fact, sought indemnification from CBS with respect to those claims. ECF No. 54-2, p. 1; ECF No. 54-4, pp. 3, 7-10.

CBS also cites to a claim filed in May of 1999 by Randolph Rhodes pursuant to which CBS successfully petitioned the Administrative Law Judge to dismiss CBS as a party defendant based on its argument that Schindler had assumed liability for any and all, known or unknown workmen's compensation claims. CBS contends that because Schindler did not file any objections to the petition, it accepted responsibility for the claim. Failing to object to CBS's petition, however, is not the equivalent of accepting liability for Mr. Rhode's claim. Moreover, as argued by Schindler, there is no evidence that Schindler ever accepted tender of the claim.[5]

CBS also argues that Schindler's failure to acknowledge letters of tender regarding workmen's compensation claims submitted by Fred Johnson, Gerard Callahan and Kenneth Eckstein that were sent to Schindler after Cohen's July 14, 2005 e-mail was remitted is somehow contradictory to, and precludes Schindler from maintaining, its current position that it is not liable for claims that were unknown at the time of Closing. Schindler's silence on the matter, however, does not evidence an inconsistency with its interpretation of the APA as set forth in

---

[5] It should also be noted here that CBS's petition to be dismissed as a defendant also included a request that Schindler be joined as a new, proper defendant. ECF No. 54-7, pp. 3-5. Although the Administrative Law Judge dismissed CBS as a party defendant, his Order did not speak to CBS's request to add Schindler as a defendant. ECF No. 54-8, p. 1.

Cohen's e-mail. If anything, it evidences that, having made its position known in Cohen's e-mail, Schindler need not reiterate its position with respect to the claims filed by Messrs. Johnson, Callahan, or Eckstein. Moreover, as CBS necessarily acknowledges, Schindler never accepted tender of these claims either.

Finally, CBS points to a claim made by Diane Ward, widow of James Ward, in July of 1993, pursuant to which the New York Workers' Compensation Board issued a Notice of Decision on November 24, 1998, apportioning an award 50% to be paid by Crawford Insurance (Schindler's Third Party Administrator) and 50% to be paid by Gates McDonald (CBS's Third Party Administrator). ECF No. 55-1. It is undisputed, however, that Schindler paid CBS's apportionment of the claim from April 3, 1998 through early 2007 -- two years after Cohen's e-mail was issued. CBS therefore argues that these payments fly in the face of Schindler's position that Cohen's e-mail constitutes an unequivocal and complete revocation by Schindler regarding claims unknown at the time of closing. The Court disagrees.

The fact that Schindler assumed responsibility for a single workmen's compensation claim that had not been incurred prior to closing on the APA, and did so for approximately seven years before Cohen set forth Schindler's position regarding the meaning of Section 4.1 in his July 14, 2005 e-mail, does not negate the force of that e-mail or the fact that it effectively breached the APA with respect to Mr. Daley's claim.

Moreover, even assuming that Schindler's payments relative to Diane Ward's workers' compensation claim demonstrates an assumption of liability and/or acquiescence that it was liable under Section 4.1, CBS states that Schindler made payments through "early 2007." Since then (and, of course, prior to) Schindler has maintained that it is not liable for claims that were unknown at the time the APA was executed. Thus, even if Schindler's payments to Mrs. Ward

10

somehow tolled the statute of limitations, they did so only until "early 2007," and CBS would have had until "early 2011" to file suit. It did not do so until July 23, 2012, which is clearly out of time. Schindler's Motion for Summary Judgment based on Statute of Limitations, therefore, is properly granted.[6]

### 2. Motion for Summary Judgment Based on Contract

Having found that the instant action is barred by the applicable four year statute of limitations, the Court need not reach Schindler's alternative Motion for Summary Judgment Based on Contract as it has been rendered moot.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Schindler's Motion for Summary Judgment Based on Statute of Limitations, ECF No. 35, be granted, and Defendant Schindler Elevator Corporation's Motion for Summary Judgment Based on Contract, ECF No.40, be dismissed as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

---

[6] Schindler has argues, and CBS does not dispute, that CBS's claim for declaratory relief brought at Count II of the Complaint is subject to the same four year statute of limitations and began to run concurrent with CBS's claim for breach of contract. Accordingly, Count II of the Complaint should be dismissed as well.

n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

    Respectfully submitted,

    /s/ Maureen P. Kelly
    MAUREEN P. KELLY
    UNITED STATES MAGISTRATE JUDGE

Dated: May 20, 2014

cc:    The Honorable David Stewart Cercone
       United States District Judge

       All counsel of record via CM/ECF